Pages 1 - 20

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

| | | |
|---|---|---|
| SAN FRANCISCO BAYKEEPER, et al, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. C 19-5941 WHA |
| | ) | |
| U.S. ENVIRONMENTAL PROTECTION | ) | |
| AGENCY, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| STATE OF CALIFORNIA, by and | ) | |
| through XAVIER BECERRA, Attorney | ) | |
| General, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. C 19-5943 WHA |
| | ) | |
| ANDREW WHEELER, et al, | ) | |
| | ) | |
| Defendants. | ) | Thursday |
| | ) | January 2, 2020 |
| _____ | ) | 11:00 a.m. |

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

**For Plaintiffs Save the Bay, Committee for Green Foothills and
Citizens' Committee to Complete the Refuge (19-CV-5941 WHA):**
                    COTCHETT PITRE & McCARTHY LLP
                    San Francisco Airport Office Center
                    840 Malcolm Road
                    Burlingame, California 94010
              **BY:  ERIC JAMES BUESCHER, ESQ.**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

*Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR*
            Official Reporter - US District Court
            Computerized Transcription By Eclipse

**APPEARANCES:   (CONTINUED)**

**For Plaintiff San Francisco Baykeeper (19-CV-5941 WHA):**
                        SAN FRANCISCO BAYKEEPER
                        1736 Franklin Street
                        Suite 800
                        Oakland, California 94612
               BY:  **NICOLE CHIYEKO SASAKI, ESQ.**


**For Plaintiff State of California (19-CV-5943 WHA):**
                        Office of the Attorney General
                        300 South Spring Street.
                        Suite 1702
                        Los Angeles, California 90013
               BY:  **GEORGE MATTHEW TORGUN, ESQ.**


**For Defendants:**            UNITED STATES DEPARTMENT OF JUSTICE
                        Environment & Natural Resources Div.
                        P.O. Box 23986
                        Washington, DC 20026
               BY:  **ANDREW J. DOYLE, ESQ.**


                        U.S. ENVIRONMENTAL PROTECTION AGENCY
                        Region IX
                        75 Hawthorne Street
                        San Francisco, California 94105
               BY:  **BRETT MOFFATT, ESQ.**


**For Intervenor Defendant Redwood City Plant Site, LLC:**
                        HUNTON ANDREWS KURTH LLP
                        50 California Street
                        Suite 1700
                        San Francisco, California 94111
               BY:  **TOM JOEL BOER, ESQ.**

                        —   —   —

| | |
|---|---|
| 1 | **Thursday - January 2, 2020**                    **11:11 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling Civil Action 19-5941, |
| 5 | San Francisco Baykeeper, et al versus Environmental Protection |
| 6 | Agency, et al, and related Case 19-5943, State of California |
| 7 | versus Andrew Wheeler, et al. |
| 8 | Counsel, please step forward and state your appearances |
| 9 | for the record. |
| 10 | **MR. BUESCHER:**  Good morning, Your Honor.  Eric |
| 11 | Buescher, Cotchett, Pitre and McCarthy, for plaintiffs Save The |
| 12 | Bay, Committee for Green Foothills and Citizens' Committee to |
| 13 | Complete the Refuge. |
| 14 | **THE COURT:**  Okay. |
| 15 | **MS. SASAKI:**  Good morning, Your Honor.  Nicole Sasaki |
| 16 | from San Francisco Baykeeper. |
| 17 | **THE COURT:**  Okay. |
| 18 | **MR. TORGUN:**  Good morning.  George Torgun on behalf |
| 19 | of the State of California. |
| 20 | **THE COURT:**  George who? |
| 21 | **MR. TORGUN:**  Torgun. |
| 22 | **THE COURT:**  I don't have you here.  He should be on |
| 23 | this list somewhere; right? |
| 24 | **THE CLERK:**  He is.  He's right here (indicating). |
| 25 | **THE COURT:**  Oh, oh.  Down there.  Yes, I see.  Got |

1   you.

2        Okay.  And?

3            **MR. DOYLE:**  Hello.  Andrew Doyle, U.S. Department of

4   Justice, Environment and Natural Resources Division, for the

5   defendants.

6        I'm joined today by Brett Moffatt of the EPA Region Nine,

7   who has not yet entered an appearance, but he is a member of

8   the Bar of this court.

9            **THE COURT:**  Sure, okay.

10       And?

11           **MR. BOER:**  Good morning and Happy New Year, Your

12  Honor.  Tom Boer on behalf of proposed intervenor Redwood City

13  Plant Site, LLC.

14           **THE COURT:**  Redwood who?

15           **MR. BOER:**  Redwood City Plant Site, LLC.

16           **THE COURT:**  All right.  Okay.  Thank you.

17       Why don't you all just stand here.  I think it would be

18  better if you just stood up here.

19       I read your statement, so I just don't know.  You have

20  such a long drawn-out thing.  I fear if I let you negotiate

21  over the -- the scope of the administrative record, I know

22  where that will lead.  It gets ridiculous.  What's going to

23  happen is that you, on the plaintiff's side, will have all

24  kinds of asks to go in there, and they are going to say no.

25  And then -- as you're trying to cover so many hypothetical

1  bases, you don't know.  So it's going to just degenerate into

2  nothing.  No progress.  So I'm not going to do that.

3       Here.  I'm going to give you Plan A.  First of all, let me

4  ask the intervenor:  Have you moved to intervene yet?  And have

5  I ruled on it?

6            MR. BOER:  Yes, Your Honor.  We did move to intervene

7  on Christmas Eve and you have not ruled on it.  There is a

8  hearing scheduled for January 30th.

9            THE COURT:  All right.  I don't know whether I will

10  grant that or not, but we'll see.

11       Okay.

12            MR. BOER:  Your Honor, if I may?  I'm sorry.

13            THE COURT:  One sentence only.  What?

14            MR. BOER:  We did ask for a stipulation for

15  intervention, and the plaintiffs withheld decision on that

16  until seeing our papers.  So I don't know whether or not they

17  will stipulate or not to our intervention.

18            THE COURT:  I don't know either.  Okay.

19       I want to come back to, what I think should be done here

20  is that you, on the defense side, file a motion.  You're going

21  to do a motion For summary judgment anyway; right?

22            MR. DOYLE:  We anticipate cross motions for summary

23  judgment.

24            THE COURT:  Forget their motion for a minute.  You're

25  going to make a motion for summary judgment.

1      **MR. DOYLE:**  Yes, sir.

2      **THE COURT:**  So you should make that motion pronto and

3   file therewith what you think is the administrative record.

4   Are you writing this down over there?  Write it down.

5      And then the other side has a few -- a period of time, a

6   couple weeks maybe, possibly three.  You could convince me.

7   And then you bring your motion for summary judgment based on

8   the administrative record and/or -- and any motion you want to

9   make to enlarge the administrative record.

10     Now, if this is -- there are several contingencies at this

11  point.  If -- so that would be your -- not only your

12  opposition, but your cross motion, opposition to their motion.

13     So then with respect to the opposition, the original

14  motion, most likely we would just continue going on regardless

15  of all of the quibbling over the administrative record.  I'm

16  going to have a speech about that in a minute.  And it could be

17  we get to the end of the case and you win and the case goes

18  into the sunset, goes to the Court of Appeals, and we never

19  have to reach all those issues about administrative record.

20     But when the motion for summary judgment is made by -- the

21  cross motion by the plaintiffs, most likely, from my

22  experience, they are going to be unhappy, plaintiffs, with your

23  administrative record.  Again, I'm going to make a speech about

24  that in a minute.  And then they will -- plaintiffs will be

25  asking for more in the administrative record or discovery in

1    the alternative.

2         At that point I would have to assess whether or not there

3    is enough in that motion to at least delay things until we can

4    sort out the administrative record.  However, at least we would

5    then know what the competing motions are, and we would then

6    know what deserves to be considered, at least, for the

7    administrative record or not.

8         I would have to make some rulings.  Say, I make some

9    rulings and let's take the best case, you agree with my rulings

10   or at least you go ahead and supplement the administrative

11   record, and then we complete the briefing, and then we have the

12   showdown at the final hearing on both motions.

13        Now, here is my speech.  I used to work in the Solicitor

14   General's Office back when Jimmy Carter was President.  You all

15   weren't even born then probably.  Who was born in that year?

16   Anybody here who was porn in 1978, '79?  All right.  Barely.

17        Okay.  Well, anyway, I was in the Solicitor General's

18   Office.  I represented a lot of agencies and I learned how they

19   throw together the administrative records.  They put in there

20   what they want, what helps them.  They always want to deep six

21   what doesn't help them.  Not always, usually.  And they --

22   there is no -- there is no real touchstone for what -- even

23   today, for what goes into the administrative record or not.

24        I had a lot of -- in the *DACA* case, which is now in the

25   Supreme Court on a different issue -- I'm sorry.  It was on

1  this very issue.  We had a huge fight over what should go into

2  the administrative record.  And I urge you to look at that

3  briefing and the orders and so forth.  But at the end of the

4  day, that case, it went up to the Court of Appeals on the

5  record that the government wanted.  Even though I said several

6  times it was woefully inadequate to reveal what had really

7  happened and what the real record ought to be.  Nevertheless,

8  that's the record that it did go up on, because in my view the

9  Government lost on that anyway, on the Administrative Procedure

10 Act questions.  We never had to get to the constitutional

11 questions.

12      Now, I don't know whether in your case we're going to have

13 those kind of fights over the scope of the administrative

14 record.  And I -- I don't know enough about this -- I never

15 even heard of this issue before, so I -- I haven't got a clue.

16      But I will tell you that I have had enough of these

17 federal cases over 20 years and in my own practice and from

18 being in the SG's office to know there is a very high

19 likelihood we will have a fight over it.

20      So my thought of how to smoke out what ought to go into

21 the administrative record is to make those judgment calls based

22 on what the parties are seeking to get summary judgment on, so

23 that would help -- that would help educate the reader, the

24 Court of Appeals, as to what -- why it matters anyway.

25      All right.  I'm going to let you all try to talk me out of

1  that.  The Government gets to go first.

2        **MR. DOYLE:**  I'm not sure I will try to talk the Court

3  out of that.  I would like the opportunity to meet-and-confer

4  with plaintiffs on a proposed schedule to effectuate --

5        **THE COURT:**  I'll let you do that, but, you know,

6  every time I'm always shocked by how long you want.  And that's

7  because the plaintiff lawyers are just as guilty.  They want to

8  stand around the water cooler and go to the cafe and drink

9  coffee and have many, many opportunities to talk with each

10 other when this ought to be done, a brief filed in three weeks.

11 Three weeks.  Three weeks.  Hearing in three weeks.  That's

12 what I would prefer.  And even that is relaxed compared to what

13 the normal lawyers have to do.

14      But if you think you can come close to that, I'll let you

15 meet-and-confer.  That would be okay.  I wouldn't -- you know,

16 I'll give you a little bit more time than the average case.

17      Okay.  That's your two cents.

18      What's your two cents?

19        **MR. BUESCHER:**  So for the -- my three clients, we're

20 fine with that approach, Your Honor.  We're happy to work with

21 the Government to come up with the most expedited schedule.

22        **THE COURT:**  Great.  How about you two?

23        **MR. TORGUN:**  So for the State of California, I think

24 why we try to get the record complete, in our view, before we

25 go to MSJ briefing is because we want to be able to make the

```
 1    arguments we make and rely on what is in the record knowing
 2    that it's in the record.  And I understand the Court's approach
 3    that having the context of the summary judgment briefing will
 4    help it to decide, but that is -- that is why we proposed what
 5    we did.
 6             THE COURT:  You can almost make two sets of briefs.
 7    You can say:  Based on the flimsy record that they have given
 8    us, here is our best argument, but here is why we need 14 more
 9    categories of documents that will show the fraud that's been
10    going on here.
11        I mean, I'm making this up.  I don't really mean that.
12    But that's what I would expect you to say.  And then you --
13    maybe I would agree and maybe I wouldn't agree.  I don't know.
14        But you all need to understand.  Do you even think for a
15    second -- the State of California is one of the worst
16    offenders, too, when it comes to administrative records.  Did
17    you know that?  Are you in the AG's office?
18             MR. TORGUN:  I am.
19             THE COURT:  Yeah.  Well, your office is probably
20    going to do -- has done many times what they are going to do to
21    you, which is shortchange on the administrative record and
22    leave out all the good stuff and put in all the fluff.
23             MR. TORGUN:  I understand the Court's position.
24             THE COURT:  I've got cases I could cite to you
25    involving your very office on crappy administrative records.
```

1    All right.  So I understand what you mean, but you're not

2  making me -- you're not persuading me.

3    All right.  Your group is called the what?

4        **MS. SASAKI:**  Baykeeper, San Francisco Baykeeper.

5        **MR. TORGUN:**  All right.

6        **MS. SASAKI:**  And we're amenable to your proposal.

7        **THE COURT:**  Great.

8    How about the proposed intervenor?

9        **MR. BOER:**  We have no objection to your proposal.

10        **THE COURT:**  What is good?  What is your role in

11  the -- who is your intervenor?

12        **MR. BOER:**  The Redwood City Plant Site, LLC is the

13  entity that submitted the request to the Government for an

14  approved jurisdictional determination and has an interest in

15  the property that is subject to basically this litigation.

16    So the outcome basically of this litigation is going to

17  affect their property rights and their ability to use the

18  property.

19        **THE COURT:**  Well, will the administrative record

20  include every single possible communication with anybody

21  representing his client?

22        **MR. DOYLE:**  I have a definition of what the EPA

23  regards to be in the administrative record.  I'm happy to read

24  it.  It's from EPA's publicly available guidance.

25        **THE COURT:**  Let's hear what it is.

1          **MR. DOYLE:**  All right.  This is a 2011 document

2   entitled "EPA Action Development Processes Administrative

3   Records Guidance."

4       And it says:

5          "The administrative record filed with the Court

6       is the set of non-deliberative documents that the

7       decision-maker considered directly or indirectly, for

8       example through staff, in making the final decision.

9       The record should include all the factual, technical,

10      and scientific material or data considered in making

11      the decision whether or not those materials or data

12      support the decision."

13      That's from Page 4 of the document.  I can distribute

14   copies, if that's helpful.

15          **MS. SASAKI:**  Yes.

16          **MR. DOYLE:**  I should have offered that before I read

17   it.

18          **THE COURT:**  Please.  Hand it out.

19      (Whereupon document was tendered to the Court and

20       counsel.)

21          **THE COURT:**  See, one big problem with what you read

22   out loud is that what about a staff memo that summarizes or

23   describes the -- say, some scientific evidence that's otherwise

24   in the record anyway, but maybe describes it in an incorrect

25   way, or was something that the final decision-maker actually

1  did read; and if we ever got our hands on it, we could show

2  that there are 42 different ways it's in error.

3       In my view, that ought to be in the record so that we can

4  see.  Otherwise, it's just -- it's not very helpful to have an

5  administrative record that doesn't show at a minimum what the

6  actual decision-maker looked at.

7       Here is the other thing that I might allow discovery on.

8  You want to hear my speech number two?  Let's say that the

9  final decision-maker has a flimsy administrative record and

10  then they have two days of meetings beforehand to verbalize it.

11  So, really, the decision-maker is almost nothing in that

12  administrative record that they are relying on.  It's all

13  verbalized.  I know that's the way it works.

14       The people who are the intervenor is over there sitting in

15  the office of the decision-maker saying:  Here is our plan.

16  Here is the campaign contribution that we're going to give.

17  I'm -- I'm making this up.  I have no -- I'm just giving you a

18  scenario.  And it is verbalized.

19       The real administrative -- the administrative record

20  you want to -- had almost nothing to do with it, has a map of

21  the Bay.  Salt.

22       So, listen.  I find these to be hard cases and the law is

23  not developed enough to tell us when discovery is in order, and

24  it's not well enough developed to tell us when so-called

25  deliberative documents get to be shown as part of the

1 administrative record.

2   And I am not pre-judging any of this.  I'm just telling

3 you that I see it as it could lead to a lot of litigation here,

4 but I do understand the problem.  That much I can promise you.

5   All right.  So here is what we're going to do.  You know

6 how I want to go about it.  You all go meet-and-confer.  And I

7 won't say any reasonable schedule will work, but I will give

8 you some -- I will tolerate -- within some limits, I will

9 tolerate a more drawn-out approach than I would normally want

10 in litigation in order to accommodate the competing interests

11 here.  Then you submit that to me.  And if it seems like it's

12 in order, I'm just going to sign it and we'll be off and

13 running.

14   Is that all right?

15     **MR. BUESCHER:**  Sounds good.

16     **THE COURT:**  Is there any other preliminary issue you

17 want to go over?

18     **MR. BUESCHER:**  Yes, Your Honor, one other matter.

19 It's flagged in the joint statement, but given the schedule

20 that we're going to be operating under, the question of whether

21 a privilege log should be provided, we think should be

22 addressed.

23     **THE COURT:**  Yes is the answer.

24     **MR. BUESCHER:**  Okay.  We would request one at the

25 time the motion is filed.

1    THE COURT:  Anything that's a claim of privilege --

2 that is one of the most abused things in the world, is the

3 privilege, and so it's got to at least be on the privilege log.

4 That's the way I would rule.  I have no doubt about that.

5   All right.  What else?

6    MR. TORGUN:  I have one other procedural thing.  The

7 cases have been related --

8    THE COURT:  Now, I will say this.  Privilege after

9 the lawsuit started.  We don't start getting -- you don't have

10 to -- I'm talking about up to the date of the decision.  That's

11 the cutoff.  If it came the day after the decision, you don't

12 have to produce it -- or you don't have to log it.  But

13 anything up to the date of the official agency action, that has

14 to be logged.

15   By the way, I couldn't tell from your statement, is this a

16 draft?  At one point you were -- if this is not final agency

17 action, we're here prematurely.

18    MR. BUESCHER:  There is a final agency determination,

19 Your Honor.

20    THE COURT:  What is the draft business then?

21    MR. BUESCHER:  There was a determination made by the

22 Region IX EPA office that is a draft of their analysis or

23 their -- Region IX's conclusions with respect to the question.

24    THE COURT:  Who made the final decision?

25    MR. BUESCHER:  The EPA administrator.

1          **THE COURT:**  Back in Washington?

2          **MR. BUESCHER:**  Correct.

3          **THE COURT:**  What was the decision there versus

4    decision in Region IX?

5          **MR. BUESCHER:**  The exact opposite.

6          **THE COURT:**  Opposite?

7          **MR. BUESCHER:**  Yes.

8          **THE COURT:**  Well, there you go.  That doesn't mean

9    it's wrong.  It could be both of them are right.  You never

10   know.  Now, that would be an interesting thing though.

11       Here is another little wrinkle.  Are you both -- you're

12   going to have the decisions -- sorry, the administrative record

13   for both decisions, or is it your plan just to do the one in

14   Washington?

15         **MR. DOYLE:**  There is only one decision.  That's the

16   March 1st, 2019 decision.  The other document that they cite is

17   a draft.

18         **THE COURT:**  Well, did the -- so an interesting

19   question is going to be:  Did the administrator in Washington

20   bother to look at the same materials that the Region IX

21   administrator looked at?  And if not, say under oath in a

22   deposition why not?

23         **MR. DOYLE:**  We've provided the plaintiffs with two

24   very large technical documents that the final decision-maker

25   did consider.  And much of those same technical facts are in

1    the draft document they reference.

2            THE COURT:  I see this is a problem, but I'm not --

3    see, this is where it gets -- you have to do -- follow any

4    procedure and it will all get smoked out in the long run.  I

5    didn't realize that it was an exact opposite situation.

6         Okay.  Let me ask the intervenor.  Has the intervenor

7    company made campaign contributions or promised any?

8            MR. BOER:  I don't know, Your Honor, offhand.

9            THE COURT:  Do you have any information?  Knowledge

10   is not what I'm asking for.  I'm asking for information.

11           MR. BOER:  The intervenor itself is a joint venture

12   that is made up of an affiliate of DMB, which is a housing

13   developer, and an affiliate of Cargill, which is a large

14   privately-held company.  I assume that it's -- you know, the

15   affiliates that consist of the joint venture probably have made

16   campaign contributions.  I have no idea if they have made

17   campaign contributions that could be remotely relevant to this

18   matter.

19           THE COURT:  I'm talking about campaign contributions

20   to the current administration in Washington who are in charge

21   of the EPA.  That's what I'm -- well, that could be an issue.

22   I don't know.  I don't know.  But it is kind of strange that

23   there would be a reversal.

24           MR. BOER:  Well, Your Honor, I don't know that I

25   would agree to characterize it as a reversal, for what it's

```
 1   worth.

 2        I think the issue is what is the legal standard that

 3   applies to the decision that was being made and a difference of

 4   opinion in terms of what standard applies.

 5             THE COURT:  Okay.  So give me a date by which you

 6   will give me your proposed stipulated timeline.

 7             MR. DOYLE:  January 13th.

 8             THE COURT:  Great.  That will work.  How about noon

 9   on that day?  Does that work?

10             MR. DOYLE:  I'm sorry.  Noon?

11             THE COURT:  Noon.

12             MR. DOYLE:  Yes, sir.

13             THE COURT:  All right.  Good luck to both sides.

14   Thank you.

15             MR. TORGUN:  Your Honor, I started to -- I had a

16   quick question for the Court.

17        The cases are related.  We think this may benefit from

18   consolidation so we can have -- we can be filing one thing --

19   documents under one case number rather than having to file

20   duplicative things.

21             THE COURT:  Does everyone agree to that?

22             MR. DOYLE:  We agree.

23             MR. TORGUN:  As long as at least the plaintiffs can

24   retain separate briefing, we would be fine with that, and we

25   can put together a stipulation to that effect.
```

1          **THE COURT:**  Wait, wait, wait.  You mean, I'm going to

2    have to read three briefs?

3          **MR. TORGUN:**  We can discuss, you know, page limits so

4    that it's fair on either side, and we will -- we can do our

5    best --

6          **THE COURT:**  I'm going to impose a rule that you get

7    one brief with maybe five pages of each individualized

8    comments, something like that.

9          It's not fair for each of you to get a crack at the

10   government.  Just like the enemy, no one doesn't get a

11   special -- if you -- I'm not going to let you intervene if you

12   want your own brief.  So you all -- this is not fair.  It's not

13   fair to the judge either.

14         I'm willing to consolidate them.  Do we have an order here

15   to consolidate?  Have you given me an order to consolidate?

16         **MR. BUESCHER:**  That has not been submitted, Your

17   Honor.

18         **THE COURT:**  Why don't you do that?  Agree on a form

19   with the caption that you want to use going forward and the

20   case number in which you want this all to be done, and I will

21   sign that order.  That's a very good plan.  And then roll into

22   your briefing how many extra pages each party gets, each

23   plaintiff gets.  But it's not going to be many.  You don't need

24   many.  There is a core argument here.

25         **MR. TORGUN:**  All right.  Thank you.

1          **THE COURT:**  All right.  Who is from Washington here?

2          **MR. DOYLE:**  I am, Your Honor.

3          **THE COURT:**  You're from where?

4          **MR. MOFFATT:**  San Francisco, Your Honor.

5          **THE COURT:**  So you're the Region IX people.

6          **MR. MOFFATT:**  Yes.

7          **THE COURT:**  Who went the other way.

8          **MR. DOYLE:**  Of course, we say there was no decision

9    by the Region here.

10          **THE COURT:**  All right.  You went with the draft that

11   went the other way.  That's all right.  You don't have to admit

12   anything.

13          **MR. MOFFATT:**  Right, Your Honor.

14          **THE COURT:**  I loved having you all here, and I look

15   afford to seeing you again.  Thank you.

16       (Proceedings adjourned.)

17

18

19

20

21

22

23

24

25

## **CERTIFICATE OF OFFICIAL REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, January 16, 2020